STATE of Wisconsin, Plaintiff,

v.

GE-MILWAUKEE, LLC, Meriggi Management, LLC and John R. Meriggi, Defendants-Appellants,

ADMIRAL INSURANCE COMPANY,
Intervenor-Respondent.

Court of Appeals

*No. 2010AP3029. Submitted on briefs November 11, 2011.
—Decided December 6, 2011.*

2012 WI App 5

(Also reported in 808 N.W.2d 734.)

350

On behalf of the defendants-appellants, the cause was submitted on the briefs of *David V. Meany* and *Megan A. Senatori* of *Dewitt Ross & Stevens S.C.*, Milwaukee.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Timothy J. Strattner* and *Julia B. Semenak* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. This is an insurance-coverage case. GE-Milwaukee, LLC, Meriggi Management, LLC, and John R. Meriggi appeal the amended order for judgment, which declared that an insurance policy issued to them by Admiral Insurance Company did not cover the relief sought by the State of Wisconsin in connection with their dating-service business in Wisconsin, and dismissed Admiral Insurance "from this action on the merits." We affirm.

I.

¶ 2. The parties agree that the operative complaint for the purposes of this appeal is the State's first amended complaint, although it was superseded by a second amended complaint. The State sued the defendants alleging that "[i]n the course of its commercial

351

dating service, the defendants have used deceptive and otherwise illegal sales practices, in violation of numerous consumer protection laws," causing "substantial injury to Wisconsin consumers." The State sought "restitution for affected consumers, as well as forfeitures, costs, and appropriate injunctive relief."

¶ 3. According to the operative complaint, GE-Milwaukee is a Nevada company organized by John Meriggi, and is doing business in Wisconsin as "Great Expectations." Meriggi Management is GE-Milwaukee's management company, and provides "management, administrative and marketing services for" GE-Milwaukee as well as other similar businesses owned by John Meriggi. John Meriggi is alleged to be "the creator, sole owner and manager of both Meriggi Management, LLC and GE-Milwaukee, LLC." The operative complaint claims that the defendants violated the following statutes or administrative codes in connection with their dating-service business:

- WISCONSIN STAT. § 100.18, which prohibits the making of "untrue, deceptive, or misleading statements" to prospective customers;

- WISCONSIN STAT. § 100.175, which regulates dating-service businesses;

- WISCONSIN STAT. §§ 100.20, 100.52 and WIS. ADMIN. CODE ch. ATCP 127, which regulate marketing.

The operative complaint also alleged that "[s]ome of [the] defendants' violations of WIS. STAT. §§ 100.18 and 100.20 and WIS. ADMIN. CODE §§ ATCP 127.81 and 127.82(2) were perpetrated against consumers who were at least 62 years of age or disabled" and that this violated WIS. STAT. § 100.264.

352

¶ 4.    The operative complaint pegs the defendants' liability for the alleged violations on the following interrelated averments:

- Great Expectations is liable because "it directly committed the acts and practices that form the basis for the violations."

- John Meriggi "had actual or constructive knowledge of, participated in, approved, ratified, endorsed, directed, or controlled or otherwise had the ability to control the illegal acts and practices that form the basis for this action."

- John Meriggi is thus liable for the relief sought by the State because "he has had actual or constructive knowledge of, participated in, approved, ratified, endorsed, directed, or controlled or otherwise had the ability to control the acts and practices that form the basis for the violations."

- Meriggi Management "has had actual or constructive knowledge of, participated in, approved, ratified, endorsed, directed, or controlled or otherwise had the ability to control the illegal acts and practices alleged in this complaint."

- Meriggi Management is thus liable for the relief sought by the State because "it has had actual or constructive knowledge of, participated in, approved, ratified, endorsed, directed, or controlled or otherwise had the ability to control the acts and practices that form the basis for the violations."

¶ 5.    The defendants contend that Admiral Insurance has a duty to defend the State's action and indemnify them for the relief the State seeks. Admiral Insurance intervened and sought a declaration that it was not so obligated. The circuit court, in a comprehensive oral opinion, agreed with Admiral Insurance.

## II.

¶ 6. Although whether to grant or deny a declaratory-judgment motion is generally within the circuit court's discretion, our review is *de novo* when that decision depends purely on legal issues, as it does here. *See Bellile v. American Family Mut. Ins. Co.*, 2004 WI App 72, ¶ 6, 272 Wis. 2d 324, 329, 679 N.W.2d 827, 830. Our review is also *de novo* when we construe and apply statutes and insurance contracts, as we also do here. *See Wisconsin State Local Government Property Ins. Fund v. Thomas A. Mason Co.*, 2008 WI App 49 ¶ 9, 308 Wis. 2d 512, 519, 748 N.W.2d 476, 480. Thus, the defendants' extensive analysis and criticism of the circuit court's oral decision is largely immaterial to our review except where the defendants' analysis bears on the issues that we must decide, even though, as is usual, the circuit court's evaluation can be helpful. *See Bellile*, 2004 WI App 72, ¶ 6, 272 Wis. 2d at 329, 679 N.W.2d at 830.

> An insurer's duty to defend its insured is determined by comparing the allegations of the complaint to the terms of the insurance policy. The duty to defend is triggered by the allegations contained within the four corners of the complaint. It is the *nature* of the alleged claim that is controlling, even though the suit may be groundless, false, or fraudulent. The insurer's duty to defend is therefore broader than its duty to indemnify insofar as the former implicates arguable, as opposed to actual, coverage.

*Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 560, 751 N.W.2d 845, 850–851 (emphasis by *Sustache*; citations omitted). If an insurance policy covers one claim, the insurer must

provide a defense for the entire action. *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.*, 191 Wis. 2d 229, 242, 528 N.W.2d 486, 491 (Ct. App. 1995).

■■

¶ 7.  In determining a coverage issue, we look at the insurance policy sequentially:   is there a grant of coverage, and, if so, are there any applicable exclusions? *See American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 32–33, 673 N.W.2d 65, 73. Further, "[w]e analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it." *Id.*, 2004 WI 2, ¶ 24, 268 Wis. 2d at 33, 673 N.W.2d at 73. If any exclusion clearly bars coverage, we need not examine a potentially more difficult question of whether the policy under the "four corners" rule grants coverage. *See Flejter v. West Bend Mut. Ins. Co.*, 2010 WI App 174, ¶ 7, 330 Wis. 2d 721, 729, 793 N.W.2d 913, 916. As we see below, that is the situation here.

A.   *The statutes and regulation.*

¶ 8.   As noted, the State's operative complaint alleges a pervasive scheme to defraud Wisconsin citizens that violated the following provisions:   WIS. STAT. §§ 100.18, 100.175, 100.20, 100.52 & 100.264, and WIS. ADMIN. CODE ch. 127. We look at these provisions briefly.

¶ 9.   *WISCONSIN STAT. § 100.18.* The State's operative complaint asserts that the defendants violated this provision by making "untrue, deceptive, or misleading statements" in connection with their dating-service business. WISCONSIN STAT. § 100.18 is long and forbids, as material here, "any assertion, representation or statement of fact which is untrue, deceptive or misleading."

¶ 10. *WISCONSIN STAT. § 100.175.* This regulates " 'dating service' " contracts, and the State's operative complaint alleges that Great Expectations's contracts with its customers violated WIS. STAT. § 100.175(3), (4) & (6) because those contracts had terms exceeding two years. The State also alleges that Great Expectations violated those provisions by not honoring "customers' cancellation requests."

¶ 11. *WISCONSIN STAT. § 100.20.* This prohibits "[u]nfair methods of competition in business and unfair trade practices in business." WIS. STAT. § 100.20(1). It also empowers the Department of Agriculture, Trade and Consumer Protection to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." Sec. 100.20(2)(a). Pursuant to that authority, the Department issued WIS. ADMIN. CODE ch. ATCP 127, which regulates, among other things, "telephone solicitations." WIS. ADMIN. CODE §§ ATCP 127.02–127.20. The State claims that Great Expectations violated various provisions of ch. ATCP 127 in its telephone solicitation of customers by not revealing:

- the "nature and quantity of consumer services included in the sale," alleged to violate § ATCP 127.06(1)(a); the total cost of the services, alleged to violate § ATCP 127.06(1)(b);

- the "material terms and conditions affecting the sale, including credit terms," alleged to violate § ATCP 127.06(1)(c); Great Expectations's "refund and cancellation policy," alleged to violate § ATCP 127.06(1)(f); and

- the "nature, quantity, material characteristics, performance or efficacy of the services" Great Expectations would provide, alleged to violate § ATCP 127.14(5).

356

The State's operative complaint also asserts that Great Expectations falsely represented that Great Expectations "was offering its services at a reduced price" and "was making a special offer for a limited period of time," alleged to violate § ATCP 127.14(8) & (11). The State also claims that Great Expectations "[m]ade other false, deceptive or misleading representations, including those itemized in paragraph 67" of the operative complaint, alleged to violate § ATCP 127.14(15).[1]

¶ 12. *WISCONSIN STAT. § 100.52.* WISCONSIN STAT. § 100.52(3) requires that telephone solicitors register, and authorizes the Department of Agriculture, Trade and Consumer Protection to promulgate rules in that regard. The State's operative complaint alleges that neither Great Expectations nor Meriggi Management, or the telephone solicitors employed by them had registered as required by the statute and by WIS. ADMIN. CODE § ATCP 127.81(1)(a). The operative complaint also claims that the telemarketers violated Wisconsin's no-call prohibition set out in § 100.52(4) and WIS. ADMIN. CODE § ATCP 127.82(2).

¶ 13. *WISCONSIN STAT. § 100.264.* This applies enhanced penalties for those who violate, as material, WIS. STAT. §§ 100.18 and 100.20 "or a rule promulgated

---

[1] Paragraph 67 of the operative complaint alleged that Great Expectations: overstated the number of its dating-service members; overstated the age range of those members; misrepresented that it screened potential members' criminal backgrounds; misrepresented "the purpose for obtaining prospective members' credit information"; misrepresented "in the initial telephone call to prospective members" the "cost of membership"; misrepresented that there was a " 'first visit incentive price' "; misrepresented "the number of social events" it sponsored; misrepresented "that a professional photographer would take the members' photographs and videos"; and misrepresented "the expected length of the sales appointments."

under one of those sections," § 100.264(2), in connection with persons either disabled or sixty-two years or older. The State's operative complaint alleged that the defendants did this as well.

B. *The insurance policy.*

¶ 14. The defendants argue that the Admiral Insurance policy gives them coverage *via* this clause in the policy's "insuring agreement" (uppercasing omitted):

> We will pay those sums that the insured becomes legally obligated to pay as damages by reason of any negligent act or error or omission in professional services rendered, or which should have been rendered, in the "coverage territory" and during the policy period, by you, or by any other person for whose acts you are legally liable, arising out of the conduct of your business as described in the Schedule above.

Admiral Insurance does not dispute that the defendants are "insured[s]" under this clause, or that the "business as described" and " 'coverage territory' " conditions are met. Rather, Admiral Insurance argues that the four corners of the State's complaint asserts claims for volitional, not negligent acts, and, therefore, there is no coverage. The defendants, on the other hand, make essentially two interrelated contentions why this clause grants coverage:   (1) they argue that "the State alleges liability that can arise from negligence and not intentional acts or omissions"; and (2) they argue that the operative complaint's allegation that John Meriggi and Meriggi Management are liable because, *inter alia,* of their "constructive"—in addition to alleged "actual"—knowledge of Great Expectations's business practices encompasses negligence, and that thus, under *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 487–488, 326 N.W.2d

727, 740 (1982) (Unless policy specifically provides to the contrary, "an innocent insured" may recover under a policy even though the damage was caused by the intentional act of another insured.), they have coverage. They also argue, albeit without development, that the statutes and regulations permit imposition of liability for inadvertent as well as volitional or intentional violations. We need not decide these matters, however, or whether the phrase "constructive knowledge" when used in connection with Meriggi Management and John Meriggi and the operative complaint's recitation of interlocking control and oversight, implicates the doctrine of "willful blindness" so as to transmute the concept of "negligence" into one of volition, *see, e.g., Global-Tech Appliances, Inc. v. SEB S.A.*, ___ U.S.___, 131 S. Ct. 2060, 2070–2071 (2011), because the policy has a specific exclusion that relieves Admiral Insurance of any obligation to defend or indemnify, as we show next.[2] *See Flejter*, 2010 WI App 174, ¶ 7, 330 Wis. 2d at 729, 793 N.W.2d at 916 (we need only decide dispositive coverage issue).

---

[2] *Global-Tech Alliances, Inc. v. SEB S.A.*, explained the concept of "willful blindness":

> While the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. We think these requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence. Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.

*Id.*, ___ U.S. ___, 131 S. Ct. 2060, 2070–2071 (2011) (footnote omitted).

¶ 15.   Admiral Insurance points to the following clause in the policy as excluding coverage for the claims the State asserts in the operative complaint:

> This insurance does not apply to:
>
> . . .
>
> b.   to *any claim arising out of, or contributed to by the dishonest, fraudulent,* criminal or malicious *act or omission,* or arising out of willful violation of any penal statute or ordinance[.]

(Emphasis added.)[3] There is no doubt but the State's operative complaint—root and branch—alleges a dishonest and fraudulent dating-services scheme. Thus, all the claims the State asserts either "arise out of" or were "contributed to" by the "dishonest [or] fraudulent . . . act[s] or omission[s]" specified in the operative complaint. *See Trumpeter Developments, LLC v. Pierce County,* 2004 WI App 107, ¶ 9, 272 Wis. 2d 829, 834, 681 N.W.2d 269, 271 (citation omitted). ("The phrase 'arising out of' in an insurance policy is very broad, general, and comprehensive and is ordinarily understood to mean originating from, growing out of, or flowing from. When 'arising out' of is used in an exclusion, all that is necessary is some causal relationship between the injury and the event not covered.") (citation omitted); *see also Flejter,* 2010 WI App 174, ¶ 8, 330 Wis. 2d at 731, 793 N.W.2d at 917 (The essence of "arising out of" is that the allegations would not be actionable "without the excluded risk.") (concurrent-cause analysis); *Tasker by Carson v. Larson,* 149 Wis. 2d

---

[3] Admiral Insurance does not argue that any of the statutes or regulations on which the State brings this action are "penal."

360

756, 760–761, 439 N.W.2d 159, 161 (Ct. App. 1989) ("[A]rising out of" means "almost any causal connection or relationship.") (automobile insurance) (quotation marks and quoted sources omitted). Thus, the exclusion applies even assuming but not deciding that there was an initial grant of coverage. We affirm the circuit court without considering Admiral Insurance's other contentions in support of its order. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed). *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

*By the Court.*—Order affirmed.